**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) |
| v. | ) I.D. No.    1609020626 |
| | )              1609020620 |
| BEATRIZ Y. FANA-RUIZ, | ) |
| | ) |
| Defendant. | ) |

Submitted: June 17, 2019
Decided: August 9, 2019

*Upon consideration of the Motions in Limine and Applications to Admit Opinion Testimony*
***GRANTED*** *in part and* ***DENIED*** *in part*

John W. Downs, Esquire and Barzilai K. Axelrod, Esquire, Department of Justice, Wilmington, Delaware, *Attorneys for the State of Delaware.*

Kevin J. O'Connell, Esquire and Misty A. Seemans, Esquire, Wilmington, Delaware, *Attorneys for Defendant Beatriz Y. Fana-Ruiz.*

## I.      GENERAL BACKGROUND

The State charged Defendant Ms. Beatriz Y. Fana-Ruiz with one count of Arson First Degree, six counts of Murder First Degree, one count of Assault First Degree, Six Counts of Reckless Endangering in the First Degree and two counts of Arson in the Third Degree. The State alleges that Ms. Fana-Ruiz started a fire at around 2:30AM on September 24, 2016 by placing a burning piece of paper in a dollhouse in her basement. Three firefighters were killed while fighting this fire. The State indicted Ms. Fana-Ruiz on January 23, 2017.

Ms. Fana-Ruiz provided a number of statements to law enforcement officials that are at issue. First, Wilmington Police Department ("WPD") detectives interviewed Ms. Fana-Ruiz on or around 5:45 p.m. on September 24, 2016. Second, two Alcohol, Tobacco and Firearm

("ATF") investigators interviewed Ms. Fana-Ruiz on September 28, 2016. Third, on September 28, 2016, the ATF investigators walked through the scene of the fire with Ms. Fana-Ruiz. During discussions with the ATF investigators, Ms. Fana-Ruiz provided inculpatory statements including a confession to having started the fire. The WPD detectives and the ATF investigators provided Miranda warnings to Ms. Fana-Ruiz before the interviews.

On August 2, 2018, Ms. Fana-Ruiz provided the State with three expert reports. The authors of the expert reports are James M. Walsh, Ph.D, LPCMH, I.Bruce Frumkin, Ph.D., ABPP, and Brian L. Cutler, Ph.D. At trial, Ms. Fana-Ruiz seeks to have Dr. Frumkin and Dr. Cutler testify. Dr. Walsh will not testify, but Dr. Frumkin and Dr, Cutler both rely on certain conclusions made by Dr. Walsh. Through the testimony of Dr. Frumkin and Dr. Cutler, Ms. Fana-Ruiz seeks to provide testimony that discuss interrogation techniques, the "phenomenon" of contaminated or false confessions, the susceptibility of a person to providing a contaminated or false confession and Ms. Fana-Ruiz's mental state and susceptibility.

In response, the State asked the Court to order Ms. Fana-Ruiz to undergo psychiatric and/or psychological testing from State retained experts. On November 21, 2018, the Court ordered Ms. Fana-Ruiz to submit to such testing. The State then had Ms. Fana-Ruiz examined by Gregory B. Saathoff, M.D. and Stephen Mechanick, M.D. Subsequently, the State submitted expert reports from Dr. Saathoff and Dr. Mechanick. The State has consistently characterized the Dr. Saathoff and Dr. Mechanick reports as rebuttal reports to be used in the event that the Court allows Dr. Frumkin and Dr. Cutler to testify.

The State and Ms. Fana-Ruiz moved to preclude Dr. Saathoff, Dr. Mechanick, Dr. Frumkin and Dr. Cutler from testifying at trial. The Court held a *Daubert* hearing from March 25, 2019 through March 28, 2019 (the "Hearing") regarding the admissibility of testimony from

2

the various doctors.  At the conclusion of the Hearing, the Court made two requests of counsel: (i) submission of the proposed experts' curriculum vitae and (ii) copies of Ms. Fana-Ruiz's statements.  The State and Ms. Fana-Ruiz made a request to submit post-Hearing briefs.  The Court granted the request.  The parties completed briefing on June 17, 2019.

After the Hearing and the conclusion of post-hearing briefing, the Court viewed the interviews of Ms. Fana-Ruiz by the WPD detectives and the ATF investigators.  The Court notes that during the interviews with the ATF investigators, Ms. Fana-Ruiz admits to starting the fire at the residence.  The Court has been advised that Ms. Fana-Ruiz now contends that her confession is a false confession.  After review of the interviews, and as conceded by Ms. Fana-Ruiz, the Court finds no basis to conclude that the WPD detectives or the ATF investigators violated Ms. Fana-Ruiz's *Miranda* rights.

In addition, the Court has reviewed the curriculum vitae of Dr. Frumkin, Dr. Cutler, Dr. Saathoff and Dr. Mechanick.  The Court is comfortable that the testimony concerning each expert's qualifications is supported by their curriculum vitae.

As set forth below, the Court will allow Dr. Frumkin, Dr. Cutler, Dr. Saathoff and Dr. Mechanick to testify.  However, the Court will not allow Dr. Saathoff to opine that Ms. Fana-Ruiz's background and presentation is consistent with existing research regarding characteristics of known female arsonists.  The Court will allow Dr. Saathoff to testify as to Ms. Fana-Ruiz's mental state and susceptibility to falsely confess.

## II.     THE OPINIONS

**DR. FRUMKIN**.  Dr. Frumkin is a forensic psychologist.  Dr. Frumkin received his Masters Degree and his Ph.D. in psychology from Washington University.  Dr. Frumkin also has a Diplomate in Forensic Psychology from the American Board of Professional Psychology.

3

According to Dr. Frumkin, a Diplomate equates to being board certified in forensic psychology. Dr. Frumkin has been qualified and has testified as an expert in court.

Dr. Frumkin evaluated Ms. Fana-Ruiz and certain facts of this criminal case. Dr. Frumkin created a report containing his opinions.[1] The Court has reviewed Dr. Frumkin's report. After evaluating Ms. Fana-Ruiz, Dr. Frumkin opines that "Ms. Fana-Ruiz has a number of vulnerabilities which make her more susceptible to falsely confessing compared to others in light of the interrogation used."[2] Dr. Frumkin then goes on to discuss one type of false confession—Coerced-Internalized False Confession—and then moves back to discussing Ms. Fana-Ruiz's vulnerabilities like poor memory, intoxication, and that she was high at the time of the arson. It appears in the report that Dr. Frumkin is opining, or at the very least implying, that Ms. Fana-Ruiz's confession falls into the category of Coerced-Internalized False Confession. During the Hearing, Dr. Frumkin clarified that he has formed no opinion on whether Ms. Fana-Ruiz provided a false confession.

**DR. CUTLER**. Dr. Cutler is a professor at the University of Ontario Institute of Technology. Dr. Cutler has a Ph.D. in psychology from the University of Wisconsin. Dr. Cutler states that he has been conducting research on forensic psychology since 1984.

Dr. Cutler's report states that he was retained to offer opinions on (i) the risk of false confessions in general; (ii) the link between false confessions and wrongful conviction; (iii) personal and situational risk factors that increase the risk of false confessions; and (iv) the extent to which personal and situation risk factors associated with false confessions are present in the

---

[1] The parties submitted reports from each expert. The Court will not be providing pinpoint cites from these reports. The Court will provide pinpoint cites from the Hearing's transcript.

[2] According to Dr. Cutler, Dr. Frumkin "concluded" that Ms. Fana-Ruiz possessed characteristics that rendered her susceptible to social influence. "And that was based on specific tests such as the Gudjonsson suggestibility test, and based on her state of mind at the time of the fire that basically led to forgetting, for her to have a weak memory for what occurred." Hr'g Tr. 33:2-9, Mar. 26, 2019. Dr. Cutler stated the Dr. Frumkin is a clinical psychologist who performs assessments of people. *Id*. at 33:13-15.

4

interviews of Ms. Fana-Ruiz. The report goes through adiscussion of risks of false confession, links between false confessions and wrongful convictions, and personal and situational risk factors. The report then takes these general concepts and tries to tie them into the actual interviews of Ms. Fana-Ruiz by the WPD detectives and the ATF investigators.

At the Hearing, Dr. Cutler testified that he can educate the jury about the psychological factors of the interrogation process, how an interrogation is conducted, the psychological experience of people subjected to interrogation, and the situational risk factors observed in the case of Ms. Fana-Ruiz.[3] Dr. Cutler stated that he would not and could not opine on whether Ms. Fana-Ruiz gave a true or false confession. Dr. Cutler provided that "the science itself does not give [him] the tools that would enable [him] to offer such an opinion."[4]

**DR. SAATHOFF**. Dr. Saathoff is a professor in Public Health Sciences and Emergency Medicine at the University of Virginia School of Medicine. Dr. Saathoff went to medical school at the University of Missouri and completed his residency at the University of Virginia. Dr. Saathoff has been a faculty member at the University of Virginia since 1987. Dr. Saathoff is a trained psychiatrist. Dr. Saathoff has a specialty field of forensic psychiatry within the field of psychiatry. Dr. Saathoff is board-certified in psychiatry and neurology.

Dr. Saathoff personally examined Ms. Fana-Ruiz and provided an expert report containing his opinions. In his report, Dr. Saathoff presents two opinions: (i) Ms. Fana-Ruiz's background and presentation is consistent with existing research regarding characteristics of known female arsonists; and (ii) a review of Ms. Fana-Ruiz's interviews, her correctional records, her social history as well as information that she provided in her interview with Dr. Saathoff demonstrates that she identifies herself as someone who demonstrates independence

---

[3] *Id*. at 34:10-17.
[4] *Id*. at 33:5-7.

and self-advocacy when dealing with authority figures.

The State provides that Dr. Saathoff is being offered only as a rebuttal witness in the event the Court allows Dr. Cutler and/or Dr. Frumkin to testify.

**DR. MECHANICK**. Dr. Mechanick is a psychiatrist. Dr. Mechanick went to medical school at the University of Pennsylvania, completed a one-year medical internship at St. Elizabeth's Hospital in Boston and did a psychiatric residency at Beth Israel Hospital which is located in Boston. Dr. Mechanick is a licensed physician in Pennsylvania and New York. Dr. Mechanick is board certified in psychiatry and neurology. Dr. Mechanick performs both clinical and forensic psychiatric services.

Dr. Mechanick examined Ms. Fana-Ruiz. Dr. Mechanick submitted an expert report that provides opinions as to Ms. Fana-Ruiz's mental state and her susceptibility traits, if any, as those might relate to falsely confessing. Dr. Mechanick also reviewed the opinions of Ms. Fana-Ruiz's experts and provides his opinion as to their conclusions.

The State has stated that Dr. Mechanick is being offered solely as a rebuttal witness in the event that Dr. Frumkin and/or Dr. Cutler testify.

## III. DISCUSSION

### a. DELAWARE RULE OF EVIDENCE 702: ADMISSIBILITY OF EXPERT TESTIMONY

The admissibility of expert testimony is governed by Delaware Rules of Evidence 702 ("Rule 702"). Rule 702 provides that:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[5]

---

[5] D.R.E. 702.

Rule 702 is similar to Federal Rule of Evidence 702. When applying Rule 702, Delaware Courts

have adopted the U.S. Supreme Court's holdings in *Daubert v. Merrell Dow Pharmaceuticals*.[6]

*Daubert* requires the trial judge to act as gatekeeper and determine whether the expert testimony

is relevant and reliable and whether it will assist the trier of fact.[7]  The Delaware Supreme has

adopted a five-part test for trial courts to consider when determining the admissibility of

scientific or technical testimony.  The trial judge must decide whether:

> (i) the witness is qualified as an expert by knowledge, skill, experience, training or education; (ii) the evidence is relevant and reliable; (iii) the expert's opinion is based upon information reasonably relied upon by experts in the particular field; (iv) the expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue; and (v) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[8]

A trial judge must assess whether the expert's methodology, rather than the expert's conclusion,

is valid.[9]  The *Daubert* Court provided a non-exhaustive list of factors for trial judges to consider

in determining whether expert testimony is sufficiently reliable:

> [i] whether the theory or technique in question can be (and has been) tested, [ii] whether it has been subjected to peer review and publication, [iii] its known or potential error rate and the existence and maintenance of standards controlling its operation, and [iv] whether it has attracted widespread acceptance within a relevant scientific community.[10]

But, "[s]ome types of expert testimony will be more objectively verifiable, and subject to the

expectations of falsifiability, peer review, and publication, than others. Some types of expert

testimony will not rely on anything like a scientific method, and so will have to be evaluated by

reference to other standard principles attendant to the particular area of expertise."[11] Still, in all

---

[6] 509 U.S. 579 (1993).
[7] *See Daubert*, 509 U.S. at 582.
[8] *Cunningham v. McDonald*, 689 A.2d 1190, 1193 (Del. 1997).
[9] *Eskin v. Carden,* 842 A.2d 1222, 1228 (Del. 2004) (discussing whether an expert's opinion is testable and verifiable).
[10] *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993).
[11] Fed. R. Evid. 702 advisory committee's notes (2000 amend.).

cases, the court must conclude that the "proffered expert testimony ... is properly grounded, well reasoned, and not speculative before it can be admitted . . . ."[12] "The party seeking to introduce the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence."[13]

b. **ADMISSIBILITY OF EXPERT TESTIMONY REGARDING FALSE CONFESSIONS**

In similar cases, courts ruled that expert testimony on false confessions and police interrogation techniques was admissible. The courts held that this expert testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue."[14] The expert testimony was important to allow the jury to hear because "[t]he phenomenon of false confessions and the factors tending to produce such confessions is an area that is beyond the common experience of the ordinary person."[15] "A common misperception among the public is that once a person confesses to his guilt, he must be guilty."[16]

Although not directly on point, the Court's decision in *State v. Holmes*[17] provides guidance here. In *Holmes*, the Court allowed experts to testify that eyewitness testimony may be unreliable. In that case, the Court reasoned that eyewitness testimony is damning evidence and that jurors rarely are aware that several variables may affect misidentifications. False confessions are similarly incriminating evidence about which few jurors are knowledgeable.[18] As a result, expert testimony is valuable in order "to refute the commonly held notion that people do not confess to crimes they did not commit."[19]

---

[12] *Id.*
[13] *Bowen v. E.I. DuPont de Nemours & Co.,* 906 A.2d 787, 795 (Del. 2006).
[14] Fed. R. Evid. 702.
[15] *United States v. Whittle*, 2016 WL 4433685, at *3 (W.D. Ky. Aug. 18, 2016)
[16] *Id.*
[17] 2012 WL 4097296, at *2 (Del. Super. Sept. 19, 2012).
[18] *United States v. Whittle*, 2016 WL 4433685, at *3 (W.D. Ky. Aug. 18, 2016).
[19] *Id.* (quoting *Cason v. Hedgpeth*, 2009 WL 1096209, at *11 (CD. Cal. Apr. 22, 2009)).

Courts have found expert testimony on false confessions admissible in order to explain how a defendant's mental illness[20] or psychological condition rendered the defendant more susceptible to coercion or persuasion. For example, in *United States v. Hall*,[21] the Seventh Circuit Court of Appeals found that the district court erred in excluding the testimony of an expert on false confessions when the defendant's mental condition made him susceptible to giving a false confession. In that case, the defendant asserted that he suffered from a "personality disorder that makes him susceptible to suggestion and pathologically eager to please." The defendant argued that he confessed to the murder of a teenage girl "in order to gain approval from the law enforcement officers who were interrogating him." The trial court allowed psychologists to testify about the defendant's high level of suggestability and his attention-seeking behavior. But, the trial court disallowed another expert from testifying "that a phenomenon known as false confessions exists, how to recognize it, and how to decide whether it fit the facts of the case being tried." The Seventh Circuit found that the trial court erred by excluding the second expert's testimony because the jury was not likely to know that the defendant's personality disorder makes the defendant more susceptible to making a false confession.

Similarly, in *United States v. Whittle*,[22] the United States District Court for the Western District of Kentucky allowed a psychological expert to testify "to explain to the jury that some defendants give, for whatever reason, false confessions to a crime, and that Defendant has psychological traits that make it possible that he would give a false confession." Specifically, the court allowed the expert to testify that some mental conditions as well as environmental factors

---

[20] *See e.g., United States v. Shay,* 57 F.3d 126 (1st Cir.1995).
[21] 93 F.3d 1337, 1342 (7th Cir. 1996).
[22] 2016 WL 4433685, at *4 (W.D. Ky. Aug. 18, 2016).

such as sleep deprivation, drug and alcohol use and emotional distress made the defendant more susceptible to giving a false confession.[23]  In admitting the expert testimony, the court reasoned, "[h]ow these factors could influence a false confession are well beyond the purview of a layperson; therefore, [the expert's] testimony would be helpful to the jury.[24] Finally, the court admitted expert testimony on false confessions to testify about, "general causes of false confessions, [ ] the specific role of interrogation tactics in generating false confessions[,] and the bases of individual vulnerability to interrogative influence . . . and false confession."[25]

In contrast, courts have found expert testimony on false confessions not relevant and so inadmissible when the defendant has not presented any evidence of a disorder, mental conditions, or environmental factors increasing the likelihood of a false confession. For example, in *United States v. Deuman*,[26] the Federal District Court for the Western District of Michigan found that expert testimony on allegedly coercive police interrogation techniques was not admissible. This is because the interrogation techniques are more likely to produce true confessions than they are to produce false confessions. Also, the court found that there was not enough empirical evidence to find that coercive techniques actually caused defendants to make false confessions. The only such evidence is from controlled experiments where researchers interrogated participants, some of whom made false confessions. But, the court held that these experiments did not replicate real-world interrogations because the same penalties of being charged with a crime did not exist in the experiments and the interrogators were not law enforcement officials.[27]

---

[23] *Id.*
[24] *Id*.
[25] *Id*. Cases in other states have followed the analysis in *Whittle. See, e.g., Tigue v. Commonwealth*, 2018 WL 7814537, at *1 (Ky. Nov. 1, 2018).
[26] 892 F. Supp. 2d 881, 884 (W.D. Mich. 2012).
[27] *See also United States v. Thomas*, 214 F. Supp. 3d 187, 190 (E.D.N.Y. 2016); *United States v. Rodriguez-Soriano*, 2017 WL 6375970, at *1 (E.D. Va. 2017).

In addition, in *State v. Wilson*, the Delaware Superior Court found that expert testimony did not allow the defendant to introduce evidence on false confessions because the defendant had "not offered any reason, rationale, or expert opinion for why he would have falsely confessed."[28]

Lastly, courts have disallowed expert testimony on false confessions because of purported prejudice to the prosecution from an expert's ratification that a confession is false. In order to correct this problem, courts limit experts' testimony to explaining law enforcement interrogation techniques, the defendant's vulnerabilities and how the interrogation techniques interact with the defendant's vulnerabilities.[29]  An expert may not testify that a defendant has made a false confession.

### c. ALLOWED TESTIMONY IN THIS TRIAL

The Court will allow Dr. Frumkin and Dr. Cutler to testify.  If Dr. Frumkin and/or Dr. Cutler testify, the State can call Dr. Saathoff and Dr. Mechanick as rebuttal witnesses.

The experts proffered by the parties are all qualified to render their opinions.  Dr. Frumkin and Dr. Cutler have Ph.D.'s in psychology and experience (or board certification) with forensic psychology.  Dr. Saathoff and Dr. Mechanick have medical degrees and are psychiatrists.  Ms. Fana-Ruiz attempts to dismiss the qualifications of Dr. Saathoff and Dr. Mechanick because they are not board certified forensic psychologists.  This may be true; however, the Court notes that Dr. Saathoff and Dr. Mechanick are both licensed medical doctors and psychiatrists with experiences treating and opining on the issues raised in this criminal case. In addition, Dr. Saathoff and Dr. Mechanick provide forensic psychiatric services.

The Court finds that the expert reports are all based upon solid foundations generally accepted (although debated) in the scientific community.  Each report is based, in some way or

---

[28] 2006 WL 1064179, at *5 (Del. Super. Mar. 9, 2006), *aff'd*, 907 A.2d 146 (Del. 2006).
[29] *See United States v. Whittle*, 2016 WL 4433685, at *5 (W.D. Ky. Aug. 18, 2016).

the other, on clinical observations of Ms. Fana-Ruiz, the facts of this criminal case and accepted publications and studies regarding mental conditions, susceptibility or false confessions.

Unlike *Wilson*, Ms. Fana-Ruiz has offered reasons, supported by expert opinions, for why she would have falsely confessed. Dr. Frumkin's reports that Ms. Fana-Ruiz has poor memory of the fire because, before the fire, Ms. Fana-Ruiz used six bags of heroin, six Xanax bars, some cocaine, and drank two bottles of Johnny Walker Red. Moreover, Ms. Fana-Ruiz purportedly ingested more drugs and alcohol after the fire and before both her interviews. Dr. Frumkin concludes that "[t]he psychological factors that place her at greater risk, apart from her memory issue, are her chronically extreme anxiety, her emotional instability or mood fluctuations, and her interrogative suggestibility." Dr. Frumkin continued that the Defendant's "anxiety levels are extreme and she has periods of intense depression, sometimes resulting in suicidal thoughts and attempts. . . . She appears to meet the criteria for major depressive disorder, moderate, with anxious distress and generalized anxiety disorder."

Dr. Cutler opines similarly. Dr. Cutler concludes that Ms. Fana-Ruiz "is the type of person who is particularly susceptible to social influence and at risk for false confession. In addition, the amount of alcohol and drugs consumed by [the Defendant] around the time of the fire likely contributed to her state of mind during interrogation." Dr. Cutler states "[the tactics used during the interrogations of [the Defendant] are of the type that increase the risk of false confession . . . While these tactics may, as designed, increase the likelihood that a guilty suspect would confess to perpetrating a crime, so too would the tactics increase the risk that an innocent suspect would falsely admit to a crime."

The Court provides these examples from the reports and testimony not because the Court agrees with the conclusions. Instead, the Court notes these points to demonstrate that Ms. Fana-

12

Ruiz is presenting expert testimony to explain to the jury that some defendants give, for whatever reason, false confessions to a crime, and that Ms. Fana-Ruiz has psychological traits that make it possible that she would give a false confession. As such, the Court finds this situation similar to the situations present in *Hall* and *Whittle* where the federal courts allowed expert testimony on false confessions.

The Court also finds that the issues opined on by Dr. Cutler and Dr. Frumkin are relevant under the circumstances of this criminal case. Although not contested, the Court has determined that Ms. Fana-Ruiz's statements, including her confession, to WPD detectives and the ATF inspectors are voluntary. As presented to the Court, the State intends to use the confession of Ms. Fana-Ruiz at trial. Accordingly, the jury will be able to view the confession and give such weight as the jury feels it deserves under the circumstances. The jury will also assess the accuracy and truthfulness of Ms. Fana-Ruiz's confession. Therefore, the mental condition of Ms. Fana-Ruiz and how that impacts the truthfulness of her confession is an issue here. Ms. Fana-Ruiz intends to address this by putting on expert testimony concerning her mental condition/susceptibility and how this might relate to the issue of truthfulness, *i.e.*, false confessions.

Finally, the Court finds that proffered expert testimony will not replace the jury's fact finding role so long as no expert opines as to whether Ms. Fana-Ruiz gave a truthful or false confession. The adversary process will then take its course through direct and cross-examination and the presentation of rebuttal evidence. This will mean that the jury will not be deprived of critical information when evaluating the evidence in Ms. Fana-Ruiz's case.

The Court will not allow Dr. Saathoff to testify as to his opinion that Ms. Fana-Ruiz's background and presentation is consistent with existing research regarding characteristics of

13

known female arsonists. The Court finds this testimony to be improper profiling testimony. The State argues that Dr. Cutler and Dr. Frumkin are "profiling" Ms. Fana-Ruiz as a false confessor and that this "opens the door" for other types of profiling testimony. The Court disagrees with the State's characterization of the opinions of Ms. Fana-Ruiz's experts.

The opinions of Dr. Frumkin and Dr. Cutler relate to the theory of false confessions and whether Ms. Fana-Ruiz exhibited the types of psychological susceptibility that would create a risk of a false confession. Moreover, the Court notes that whether Ms. Fana-Ruiz provided a true or false confession is not the crime for which she has been accused. In fact, the State is not required to play Ms. Fana-Ruiz's statements in its case-in-chief. The State indicted Ms. Fana-Ruiz on the charge of Arson First Degree. Dr. Saathoff is opining that Ms. Fana-Ruiz fits the characteristics of know female arsonists. This opinion touches on the ultimate conclusion that the jury will address at trial.

While the Court will not allow Dr. Saathoff to testify on characteristics of female arsonists, the Court will allow Dr. Saathoff to opine that Ms. Fana-Ruiz identifies herself as someone who demonstrates independence and self-advocacy when dealing with authority figures. Dr. Saathoff renders that opinion based on his own examination of Ms. Fana-Ruiz and the facts of this case. This opinion is being offered to rebut opinions offered by Dr. Frumkin nad Dr. Cutler as to her mental conditions and susceptibility.

The Court will limit the testimony of the experts. The Court will not allow any expert to render an opinion not contained in their report.[30] In addition, the Court will not allow any expert

---

[30] This does not mean that all items contained in a report are admissible. Some examples: (i) facts regarding Ms. Fana-Ruiz's history may or may not be admissible through expert testimony under the Delaware Rules of Evidence; (ii) Dr. Frumkin's statement in his report that Ms. Fana-Ruiz's statements fell into one of the types of false confessions (Coerced-Internalized False Confession) thereby implying that her confession is a false confession; (iii) Dr. Cutler's unnecessary statement that Miranda warnings were given in a "perfunctory" manner.

14

to render an opinion as to whether Ms. Fana-Ruiz's statements constitute true or false confessions. All the experts testified that such an opinion would be improper given (i) the state of the science on this issue and (ii) that such an opinion would invade the province of the jury as the fact finder. ***The Court will strictly enforce these limitations***. During the Hearings, the Court experienced how easily the form of question or the response can lead to the expert testifying on subjects not contained in his report, or provide a response that implies that Ms. Fana-Ruiz's statements constitute a false confession.

As an example, the Court notes the testimony of Dr. Frumkin. Although not contained in his report, Dr. Frumkin provided testimony as to five different categories or types of false confessions.[31] The Court has read Dr. Frumkin's report and notes that Dr. Frumkin does not list and discuss these five types of false confessions in his report. Instead, Dr. Frumkin mentions only the "Coerced-Internalized False Confession." Later on, Ms. Fana-Ruiz's counsel elicited the following testimony during the Hearing:

> Mr. O'Connell: Okay. Based on the review of all those materials, which of the five types of false confessions that you described earlier would most likely have happened in this if Beatriz Fana-Ruiz in fact gave a confession that was not the product of her own recollection?
>
> Dr. Frumkin: Okay. If it was a false confession or not a product of her own recollection, it would be of the coerced internalized type of false confession.
>
> Q: Doctor, in the course of your evaluation of Ms. Fana-Ruiz, did you diagnose her?
>
> A: Yes, I gave her diagnoses. I gave her the diagnosis of major depressive disorder, moderate with anxious distress, as well as having generalized anxiety disorder.
>         \*\*\*
> Q: Doctor, what does the research say about mental disorders and false confessions?
>
> A: As I testified previously that people who have mental disorders are over

---

[31] Hr'g Tr. 23:11-27:5, Mar. 25, 2019.

represented in terms of the people who have proven false confessions.[32]

On cross-examination, the State further addressed Dr. Frumkin's opinion on Ms. Fana-Ruiz and the five different types of false confessions.

Mr. Downs: But then you were asked by Mr. O'Connell in terms of the, those five categories—the voluntary false confession, the coerced compliant false confession, coerced internalized false confession, and coerced substituted false confession—why does it always begin with the word "coerced"?

Dr. Frumkin: Well, the voluntary false confession doesn't have the word coerced in it. Because when we are talking about false confessions, we're not talking about true confessions. I talked about five ways of conceptualizing why people may falsely confess to crimes they did not commit.

Q: And so you then categorized Ms. Fana-Ruiz as falling into the coerced internalized false confession category?

A: That's only assuming if she did not do the offense. If she did do the offense, it would not be a false confession of any type, it would be a true confession.

Q: But you did not say that on direct examination, did you, Doctor?

A: I didn't say that, but the question wasn't asked of me that way. The question that was asked of me was something to the effect of, you know, if her memory was the product of law enforcement's suggestion, what type of false confession would it be, or something along those lines, and that's the way I answered it, not whether she gave a true or false confession.

Q: And, again, just to be clear, you have no ability to determined when a false confession has occurred or who often one may occur?

A: Correct.[33]

Later on, the Court addressed the issue of Dr. Frumkin's opinion on Ms. Fana-Ruiz's statements and false confessions.

Mr. Downs: So if you can't render an opinion as to whether Fana-Ruiz falsely confessed, how do you put her in a category of a false confession?

The Court: I think there's a miscommunication here, because I'm not going to let him testify that she's in a category of a false confession, I don't think—if you look at the case law I'm going to give you, I think the reason he's hesitating on

---

[32] *Id*. at 72:22-74:8.
[33] *Id*. at 124:10-125:12.

16

that is he knows he can't do that.  Correct?

Dr. Frumkin:  Yes.

Mr. Downs: But, you Honor, he did, under Mr.—

The Court:  I kniow.  But that doesn't mean he's going to do it in front of the jury, Mr. Downs.  Because I picked up on your question, I didn't pick up on it initially. You don't have to worry about that.

No, I finally got the point.  Because if you say, so you would put Ms. Fana-Ruiz in category 3 of false confessions, you're basically telling the jury it was a false confession, I got it.  It took me a while.  I was slow on the uptake, I got it.

Dr. Frumkin:  But I don't think that's, if I can—

The Court:  Well, no, I know.  But that's not what your opinion is.  I've been looking at your opinion.[34]

The example testimony set out above demonstrates how careful counsel and the Court must be when allowing expert opinion testimony on the issue of confessions.  The Court, therefore, directs counsel for the parties to provide their expert witnesses with a copy of this decision, prepare accordingly and to ask appropriate questions to elicit the opinions set out in the various reports.  The Court will not allow "hypothetical" questions that use the facts of this case to elicit testimony as to whether that "hypothetical" situation constitutes a true or false confession.

The Court notes one open question—Can Ms. Fana-Ruiz use Dr. Frumkin or Dr. Cutler without some admissible evidence that Ms. Fana-Ruiz now contends that her statements constitute false confessions?  The Court is concerned that the introduction of Dr. Cutler or Dr. Frumkin without such admissible evidence would confuse the jury and/or may be irrelevant.  The Court will address this open issue with counsel prior to trial.

---

[34] *Id*. at 72:22-74:8.

## IV.    CONCLUSION

The motions in limine and applications to admit opinion testimony filed by the State and

Ms. Fana-Ruiz are **DENIED** in part and **GRANTED** in part as set forth above.

**IT IS SO ORDERED.**

Dated: August 9, 2019
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:     The Prothonotary